# EXHIBIT E

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
===================================================X
ARLENE CUTRONE,

                Plaintiff(s),

-against-

BJ'S WHOLESALE CLUB HOLDINGS, INC.,and BJ'S
MEMBERSHIP CLUB, INC d/b/a BJ's WHOLESALE
CLUB,

                Defendant(s).
===================================================X

Index No.: 604341/2020

Response to First Set of Interrogatories

## ANSWERS TO INTERROGATORIES

The Responding Party, Arlene Cutrone, by and through her attorneys. Hereby answers the interrogatories submitted by defendants. In providing such answers, the Responding Party hereby specifically objects to all questions that either directly or indirectly call for the disclosure or production of privileged material and material subject to work product protection. None of the answers or information contained herein or provided to the Requesting Party shall be deemed to be waiver to such objection.

<u>INTERROGATORY 1</u>: State the present age, social security number and marital status of plaintiff and the address of plaintiff on the date of loss.

<u>ANSWER</u>: Plaintiff is 64 years old, and her social security number is xxx-xx-4248. With regard to her marital status, plaintiff objects, as information sought is outside the scope of FRCP Rule 26 (b). However, without waiving said objection, plaintiff is not married, she is a widow.

<u>INTERROGATORY 2</u>: State all lawsuits you have been a party to in the past ten (10) years

<u>ANSWER</u>: Plaintiff objects, as information sought is outside the scope of FRCP Rule 26 (b). However, without waiving said objection, plaintiff has not been a party to any lawsuits in the past 10 years.

INTERROGATORY 3: State the specific facts that support plaintiff's contention that defendant was negligent.

ANSWER: Plaintiff objects, as information sought is overly broad, any questions relating to specific facts that support plaintiff's contention that defendant was negligent may be obtained at the time of depositions.

INTERROGATORY 4: Describe in detail the manner in which it is alleged plaintiff was injured, including all objects, substances or debris that directly or indirectly caused or contributed to plaintiff's injuries.

ANSWER: Plaintiff objects, as information sought is outside the scope of FRCP Rule 26 (b). However, without waiving said objection, the accident occurred when an employee recklessly, negligently, and carelessly lowered a pallet with a box full of watermelons on top of plaintiff's right foot. Client entered the store and while shopping for watermelons, an employee handling a pallet jack full of watermelons lowered/dropped the pallet on her foot. She began to scream that her foot was injured, but the employee had left the pallet and walked away, even though the pallet remained on top of her foot.

INTERROGATORY 5: Identify what part or parts of plaintiff's body came in contact with the objects, substances or debris referred to in paragraph three (3) and state what part of plaintiff's body, if any, came in contact with the ground.

ANSWER: Plaintiff's right foot came in contact with the pallet that defendant's employee was handling/ lowering, when the accident occurred.

INTERROGATORY 6: State the precise date and time of the accident/ occurrence alleged in the complaint, and give the exact location where the incident occurred on defendant's premises so that it can be readily identified.

ANSWER: The accident occurred within the premise known as BJS, on 711 Stewart Avenue, Garden City, NY 11530, on July 3, 2018 at approximately 4:00 p.m.

INTERROGATORY 7: Describe the activity plaintiff was pursuing at the time of the incident described in the Complaint and describe fully and completely the sequence of events comprising said incident. Could plaintiff have avoided the alleged defective/dangerous condition? If not, why not?

ANSWER: Plaintiff objects, as information sought is outside the scope of FRCP Rule 26 (b). However, without waiving said objection, the accident occurred when an employee recklessly, negligently, and carelessly lowered a pallet with a box full of watermelons on top of plaintiff's right foot. Client entered the store and while shopping for watermelons, an employee handling a pallet jack full of watermelons lowered/dropped the pallet on her foot. She began to scream that her foot was injured, but the employee had left the pallet and walked away, even though the pallet remained on top of her foot. Plaintiff could not have avoided the dangerous condition.

INTERROGATORY 8: Identify all documents, including photographs that pertain to and depict the condition of the alleged defective/dangerous condition at the time of accident.

ANSWER: Photographs of the watermelon cardboard will be attached to the Initial Disclosures.

INTERROGATORY 9: Identify and provide the addresses of all witnesses known to plaintiff and plaintiff's representatives, who it will be claimed are witnesses to the following:

    a. The alleged occurrence in question;

    b. The alleged defective condition;

    c. The site of the alleged occurrence immediately prior and immediately subsequent to the alleged occurrence;

    d. Any claimed notice to this defendant, whether actual or constructive;

e. The actions of any of the parties, or of any non-parties present at the time of the occurrence, before, during or after the alleged occurrence;

f. Any admissions of this defendant or its agents or employees.

ANSWER: Plaintiff objects, as the information sought is overly broad. It should be noted that the defendant should review the Amended Rule 26(a) disclosure to obtain information with regard to any potential witnesses and/or persons that may have knowledge/information about this case. Please note it is impossible to list every person that may have any information, might have witnessed this matter in some respect and/or made a statement and/or admission, therefore, plaintiff asserted any potential persons or staff members at defendant's premises, however, the list is not limited and continues to grow:

- Arlene Cutrone
- Any employee at the defendants' premises who witnessed the accident
- Defendants' employee who filled in the accident report.
- Defendants' employee who lowered the pallet onto plaintiff's foot.
- Any witness identified by plaintiff
- Any witnesses identified by defendants
- Any individual with whom plaintiff have discussed the accident
- Any individual with whom defendants have discussed the accident
- Any employee who responded to the accident
- Any individual whose name appears in the accident report
- Any individual member present on the premises at the time of the accident
- Any individual worker present on the premises at the time of accident

- Any individual whose names are yet to be revealed through the discovery process and deposition testimony.

In addition, Plaintiff reserves the right to call any and all staff agent or employee that may have witnessed or may have made a statement with regards to the accident.

INTERROGATORY 10: Is plaintiff claiming actual notice? If so, identify the person who gave such notice. If written notice was given, identify all documents communication such notice.

ANSWER: Non-applicable.

INTERROGATORY 11: Is plaintiff claiming constructive notice? If so, what constituted constructive notice to defendant? In terms of minutes, hours, days, weeks, or months, state exactly how long the allegedly dangerous condition existed prior to the time of the accident.

ANSWER: Constructive notice is claimed in that the defendant, its agents and/or employees caused, and created a dangerous circumstance to be, become and remain at the subject premises for such a lengthy period of time prior to this accident that the defendant knew or in the exercise of due and reasonable care should have known to be then and there existing and remedy same. Defendant knew or should have known of similar problems to have occurred in the past due to handling merchandise with machinery within the premise, while the store is open to the public. Moreover, the company policy and common practice should be known and followed by all the employees, and agents of defendants. The employee that lowered the pallet was handling a jack pallet with heavy product around the premises during business hours. For this reason, the defendants' employee should have known people were there, follow the company's policy, and common practice for uses and storage of product in the warehouse, specially when machinery is being used while people were shopping, and install proper signs to make the public aware of such dangerous conditions.

<u>INTERROGATORY 12</u>: Describe in detail all injuries claimed and specify which of those injuries are claimed to be permanent.

ANSWER: The following injuries were caused, aggravated, activated and/or exacerbated as a result of the accident:

**RIGHT FOOT**

- Right foot hallux abductovalgus

- Hammertoe second digit

As a result of the accident, the plaintiff was required to undergo the following operative procedures done by Dr. Steven Yager, M.D. at New Horizon Surgical Center, L.L.C. on October 9, 2020:

1. **RIGHT FOOT CHEVRON OSTEOTOMY WITH PARAGON 28, 2MM X 3.0 MM SCREW FIXATION.**
2. **REPAIR OF THE FIRST METATARSAL HEAD CARTILAGINOUS SURFACE VIA MICROFRACTURE,**
3. **ADDUCTOR TENOTOMY**
4. **ARTHOPLASTY TO THE PROXIMAL INTERPHALANGEAL JOINT OF THE SECOND TOW WITH A DORSAL, LATERAL, AND MEDIAL CAPSULOTOMY.**

<u>Procedure</u>

The patient was brought into the operating room and placed on table in supine position. After administration of regional and general anesthesia, the patient was placed on the surgical bed. At this time, A thigh cuff was placed around her right thigh. It was well padded and then the foot and ankle were prepped and draped in usual sterile manner. The patient achieved appropriate preoperative antibiosis. After period of 5 minutes of leg elevation, a pneumatic thigh cuff and an application of an Esmarch tourniquet and a pneumatic thigh cuff was inflated to 300 mmHg.

Procedure began with attention to the first meratarsophalangeal joint where a 3 cm medial incision was made. It was deepened with sharp and blunt dissection, carefully retracting and ligating all vital structures as necessary. At this time, the capsule of the head of the first metatarsal was exposed and it was incised. This exposed the head of the first metatarsal. At this time plantarly and laterally, the collateral ligament was removed utilizing sharp dissection. Attention was directed to the first interspace where adductor tenotomy and lateral capsulotomy was performed. Now, we were able to free up the the head of the first metatarsal.

The head of the first metatarsal had significant cartilaginous damage. At the apex, there was a full thickness gap with cartilaginous void noticed measuring 3 mm x 5 mm. Attention was directed to the inferior surface about the metatarsal head distally which was totally eroded with no cartilaginous surface tearing. As well as the area, inferior metatarsal head, about the cristea. At this time, microfracturing was achieved utilizing a 0.45 K-wire.

At this time, utilizing a sagittal saw, the medial eminence was resected in total. All sharp edges were smoothed. The foot was now placed in the sagittal plane where a chevron style osteotorny was created such that the apex was distal. The arms were projected proximally aiding an angle of approximately 60 degrees. Additionally, this allowed for a slight plantar flexion and lateral correction. The capital fragment was moved laterally and reduced the intcrmctatarsal angle. Proximal impaction was achieved under fluoroscopic examination. The head of the first metatarsal was noted to be rectus and satisfactory. At this time, the standard AO fixation was applied. K-wires were inserted to the capital fragment of the first metatarsal. A 3 .0 mm cannulated Paragon screw was inserted under fluoroscopy for a stable capital fragment. All sharp edges were smoothed and the capital fragment was noted to be in a satisfactory position. The wound was copiously lavaged and capsular tissue was closed with 2-0 Vicryl, subcu was aligned and closed with 3-0 Vicryl, skin margins aligned and closed with 3-0 Rapide.

Attention was now directed too the 211d proximal interphalangeal joint. A 2 cm linear incision was made. It was deepened with sharp and blunt dissection carefully retracting and ligating all vital structures as necessary. At this time, the proximal interphalangeal joint was brought into the wound and a transverse incision about the collateral ligaments was made exposing the head of the proximal phalanx. The collateral ligament was then resected back, and utilizing a bone cutting forceps the head of the proximal phalanx was resected in total. All sharp edges were smoothed. The wound was flushed with copious amounts of sterile saline. At this time, a dorsolateral and medial capsulotorny was performed to reduce dorsal capsular contractures, At the metatarsal phalangeal joint. The proximal interphalangeal joint arthroplasty was achieved and capsular closure was achieved with 2-0 Vicryl. Subcu was aligned and closed with 3-0 Vicryl and skin margins were aligned and closed with 3-0 Vicryl. The cuff was deflated. Capillary return was noted to be spontaneous to all digits. The patient tolerated the surgery and anesthesia well. She was placed in a dry sterile dressing and was transported to recovery room with all vital signs stable and in good condition.

- 5 x 5 mm neuroma in the third interspace;

- Hammertoe deformities of the second through fifth digits;

- Hallux valgus;

- Soft tissue contusion;

- Right foot pain;

- Abnormalities in the right foot;

- Diminished sensation to the right foot;

- Severe pain, swelling, stiffness and tenderness of the right foot;

- Right foot sprain/strain;

- Marked restrictions of range of motion;

- Need for inserts;

- Need for foot brace/support;

- Need for pain medication;

- Need for therapy;

- Need for surgery;

- As a result of the foregoing the plaintiff suffers from severe pain, swelling and tenderness of the right foot extremity resulting in loss of strength, loss of function, loss of motion, restriction of movement, all with involvement of the surrounding soft tissue, nerve endings, blood vessels, muscles, tendons and ligaments with resulting pain, deformity and disability.

The foregoing injuries directly affected the bones, tendons, tissues, muscles, ligaments, nerves, blood vessels and soft tissue in and about the involved areas and sympathetic and radiating pains from all of which the plaintiff suffered, still suffers and may permanently suffer;

As a result of the accident and the injuries herein sustained, the plaintiff suffered a severe shock to her nervous system;

The foregoing injuries impaired the general health of the plaintiff;

The plaintiff verily believes that all of the injuries herein above sustained, with the exception of bruises and contusions, are permanent and progressive in nature;

The plaintiff may permanently suffer from the aforesaid injuries and from its effects upon his nervous system and may limit his activities in his employment and his life. Plaintiff may be restricted in his normal life and activities and may permanently require medical and neurological care and attention. All injuries incurred are deemed permanent in nature.

Please take notice, that to the extent defendants claim that any injuries sustained by the plaintiff were caused by pre-existing conditions and/or degenerative conditions, the plaintiff alleges that any so claimed pre-existing and/or degenerative conditions were latent, inactive and dormant and were exacerbated, activated and/or aggravated by the acts and omissions of the defendants giving rise to the accident and injuries as set forth herein.

INTERROGATORY 13: Identify all prior and/or subsequent accidents or occurrences in which plaintiff sustained personal injuries of a nature, location, extent, duration or effect similar to those

listed in response to paragraph twelve (12).

ANSWER: Plaintiff was walking in place at her home, and she hit her foot with the ground.

INTERROGATORY 14: Identify all doctors or health care providers plaintiff consulted for any prior injury of a nature, location, extent, duration and effect similar to those listed in response to paragraph 12.

ANSWER: Non applicable, as plaintiff has not had any prior injury of a nature, location, extend, duration and effect similar to those listed in response to paragraph 12.

INTERROGATORY 15: Identify all doctors or health care providers plaintiff consulter with regards to the injuries listed in response to paragraph twelve (12)

ANSWER: Below is a list of the medical personnel and/or facilities plaintiff that may have treated the plaintiff, however, the list is not limited and continues to grow:

- Philip Palmeri, D.P.M., P.C.
- Steven M. Yager, D.P.M., F.A.C.F.A.S.
- Zwanger- Pesiri Radiology
- New Horizon Surgical Center, L.L.C.

INTERROGATORY 16: Specify the special damages plaintiff incurred as a result of defendant's alleged negligence. Plaintiff must answer this interrogatory regardless of whether special damages were paid by a collateral source. Provide copies of all bills, collateral source payments and authorizations to obtain the records of persons submitting such bills to plaintiff.

ANSWER: Authorization to obtain plaintiff's medical insurance under CIGNA Health Insurance member id #N32554561 will be attached in the response to defendant's first request for production.

INTERROGATORY 17: Identify all experts on both liability and damages, including a description of their area of expertise, their proposed testimony, and the basis for their proposed testimony.

ANSWER: Plaintiff will call health care providers at the time of trial who will testify based upon the history of the trauma, the physical complaints made by the plaintiff, the physical examinations conducted by the health care provider, the results of diagnostic tests performed on the plaintiff, review of medical records and report of other health care providers who have treated and examined the plaintiff, the substance of which are contained in the narrative reports of said physicians, as well as the health care providers education, training and expertise in their particular field of medicine.

- Arlene Cutrone
- Any defendant's agent
- Any employee at the defendants' premises who witnessed the accident
- Defendants' employee who filled in the accident report
- Defendants' employee who lowered the pallet onto plaintiff's foot
- Any witness identified by plaintiff
- Any witnesses identified by defendants
- Any individual with whom plaintiff have discussed the accident
- Any individual with whom defendants have discussed the accident
- Any employee who responded to the accident
- Any individual whose name appears in the accident report
- Any individual member present on the premises at the time of the accident
- Any individual worker present on the premises at the time of accident

- Any individual whose names are yet to be revealed through the discovery process and deposition testimony.
- Philip Palmeri, D.P.M., P.C.
- Steven M. Yager, D.P.M., F.A.C.F.A.S.
- Physicians and medical personnel/ employees at Zwanger- Pesiri Radiology
- Physicians and medical personnel/ employees at New Horizon Surgical Center, L.L.C.
- Employees of any medical supply company where plaintiff was provided modalities, if any.
- Any and all physicians or medical providers who provided services or evaluation to plaintiff for MRI of the right foot.
- Employees of any pharmacies where plaintiff had prescriptions filled
- Any physical therapist or other therapist with whom plaintiff treated
- Any individual whose name appears in medical reports and accident reports
- Experts retained by defendant
- Experts retained by plaintiff
- Individuals who certified medical records as true and complete copy
- Plaintiff's family/ primary care physician(s)

INTERROGATORY 18: State the nature of plaintiff's employment both currently and at the time of the accident. State the length of time the plaintiff was incapacitated from employment.

ANSWER: Plaintiff works at Jackson Main School, as a secretary at the time of the accident Plaintiff was incapacitated to go to work from approximately October 5th, 2020 to April 5th, 2021.

PLEASE TAKE FURTHER NOTICE that the plaintiff reserves the right to serve an amended and/or supplemental Bill of Particulars in connection with all claims including those of continuing special damages and disabilities.

Dated: Garden City, New York
August 17, 2021

Yours, etc.,
CHOPRA & NOCERINO, LLP
BY:

YAMILE KALKACH, ESQ.
Attorneys for Plaintiff
100 Quentin Roosevelt Blvd, Suite 107
Garden City, New York 11530
212-868-3600

To:  Goldberg Segalla LLP
*Attorneys for Defendant(s) BJ'S WHOLESALE CLUB HOLDINGS, INC., and BJ'S MEMBERSHIP CLUB, INC d/b/a BJ's WHOLESALE CLUB*
200 Garden City Plaza, Suite 520
Garden City, NY 11530

## AFFIRMATION OF SERVICE

**Yamile Kalkach**, an attorney duly admitted to practice law in the Courts of the State of New York, hereby affirms, pursuant to C.P.L.R. § 2106:

I am not a party to the action, am over the age of eighteen (18) years and reside in New York, New York.

That on August 17, 2021, I served the within **Response to First Set of Interrogatories** upon:

Goldberg Segalla LLP
*Attorneys for Defendant(s) BJ'S WHOLESALE CLUB HOLDINGS, INC., and BJ'S MEMBERSHIP CLUB, INC d/b/a BJ's WHOLESALE CLUB*
200 Garden City Plaza, Suite 520
Garden City, NY 11530

at the address designated by said attorney(s) for that purpose by depositing a true copy of same enclosed in a post-paid, properly addressed wrapper in a post office/official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

Dated: Garden City, New York
August 17, 2021

_____
Yamile Kalkach